UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CRIMINAL #23-CR-10031-3-IT

_____

UNITED STATES

v.

NATHAN BODDIE

_____

**DEFENDANT'S SENTENCING MEMORANDUM
AND EXHIBITS**

**INTRODUCTION**

Defendant Nathan Boddie ["Boddie"] comes before the Court for sentencing following his guilty plea in this three-defendant methamphetamine conspiracy case. The Probation Office has calculated his guideline sentencing range as 168-210 months' imprisonment. Yet based on both the facts of the case and Boddie's personal history, a sentence of that magnitude would be grossly excessive. The defendant urges the Court to take into account his limited role in this conspiracy, the sexual abuse he suffered as a child, his struggles with drug addiction, his two decades of gainful employment as a tradesman, and the widely-recognized unfairness of the current methamphetamine guidelines and sentence him to a term of imprisonment far lower than the guideline range calculated by Probation, a result more consonant with justice and the objectives set forth at 18 U.S.C. §3553.

**I.   THE DEFENDANT'S BACKGROUND AND CHARACTER.**

Defendant Nathan Boddie is 39 years old. He grew up in Franklin, Massachusetts with his parents and brother. They were one of the only Black families in town. The Boddies were Jehovah's Witnesses, and the church was a big part of their lives. *See* Letter of Nathan Boddie,

appended hereto as Exhibit 1.

Boddie's parents divorced when he was nine. His father was shunned by the church, and he lived with his mother. When he was 10 or 11, Boddie was sexually abused repeatedly by a church official. He told no one, not even his mother, because he didn't want to upset her. Exhibit 1.

Boddie graduated from high school in 2002 with an HVAC certificate. He then worked for a plumbing company full-time while attending night school to earn his plumbing license. He has continued to work in the field of heating and plumbing for the past two decades. Exhibit 1.

Boddie experimented with illegal drugs in his youth and became addicted to opiates after a snowboarding accident in 2008. His drug addiction worsened over time. In 2015, his mother died, he lost his job, he became homeless, and his drug addiction spiraled out of control. Much of his prior criminal record (other than driving infractions) occurred during his late twenties and early thirties, when he was in the throes of untreated drug addiction. Exhibit 1 and PSR, ¶¶55-74.

In 2018, following an arrest for shoplifting, Boddie was ordered to undergo inpatient drug treatment. He completed a 90-day program at the Men's Roads to Recovery Program in Providence. *See* Letter and Certificate of Completion, appended hereto as Exhibit 2. He spent the next year at a transitional sober house. Boddie got off drugs and was able to purchase a truck so he could start his own plumbing business. Exhibit 1. He has always been a hard worker.

Unfortunately, when the pandemic struck in 2020, Boddie lost his addiction support system, and his new plumbing business struggled. He relapsed into using drugs, especially methamphetamine. He also began selling drugs and was engaging in other criminal behavior when he was arrested in February of 2023 and detained. Exhibit 1.

In his letter to the Court, Boddie accepts full responsibility for his offense conduct. He describes the insight he has gained into his repeated cycle of drug use and criminal behavior over the last seven months of incarceration. He expresses his strong desire to stay sober, work hard, raise a family, and contribute positively to the community in the future. He knows he doesn't want to waste his life as a "deadbeat drug addict." He recognizes his need for support and the reality that he is facing a substantial period of incarceration before he will get another chance to prove himself. He asks the Court to give him that opportunity. Exhibit 1.

Several real estate developers Boddie did work for over the past few years have written letters to the Court attesting to his strong work ethic and positive qualities. Kevin Hearn describes him as "a very talented tradesman" who "did excellent work." Exhibit 3, appended hereto. Luan Vokshi describes Boddie as "a hard worker with a good heart" and recommended him to a friend. Exhibit 4. Sean Hearn, who hired Boddie to do multiple plumbing and heating jobs, notes his "tireless" work ethic and "honesty." Exhibit 5.

Jill Giordano has been in a relationship with Boddie for the past two years, and they were living together at the time of Boddie's arrest. She characterizes him as a "kind, compassionate and positive" person, a "devoted partner," "an amazing stepdad to my 10 year old autistic son," and "the glue that holds our family together." Exhibit 6.[1]

Carol Wells Giordano, Jill's mother, has gotten to know Boddie over the past two years. She is the Director of Pretrial Services for the State of Rhode Island and a licensed social worker. She opines in her letter to the Court, appended hereto as Exhibit 7, that the sexual abuse and other

---

[1] It should be noted that Giordano was allegedly implicated in the instant offense (though not charged), and she faces unrelated state charges in Rhode Island. Nevertheless, her assessment of Boddie as a person merits the Court's consideration, so her letter is included..

3

adverse experiences Boddie endured as a child were "consequential." She describes him as an "intelligent, kind, and empathetic man" and as "an asset to the community" with "an abundance of drive and potential." *Id.*

Boddie has been detained at Wyatt for the past six months. During that period, he has made the most of his opportunities to better himself. A list of the more than 50 courses he has completed there is appended hereto as Exhibit 8..

## II.   THE DEFENDANT'S CRIMINAL RECORD.

It cannot be disputed that Boddie has an extensive criminal record. However, it is important to note that most of his prior convictions were for driving without a valid license (beginning at age 18) and for shoplifting during the period he was in the throes of untreated drug addiction. Significantly, he has only been charged with a crime of violence (A&B/DW) once, and that charge was dismissed. *See* PSR, ¶90. While Probation places Boddie in CHC V, that category substantially overstates the seriousness of his prior record.

In addition to his prior record, Boddie faces a number of pending state criminal charges in Rhode Island. Some of those charges arose out of his arrest on February 6, 2023. *See* PSR, ¶84. The Probation Office takes the position that the alleged conduct underlying those state charges should be deemed part of the offense conduct for the instant offense, as well. *Id.* at ¶¶25-27.

## III.  OFFENSE CONDUCT.

While the defendant disagrees with Probation's application of the Sentencing Guidelines in three specific respects, addressed below, the basic facts are not contested. Boddie was convicted of conspiring with Denise Guyette and Gerardo Garza to distribute controlled substances. Specifically, as set forth at ¶¶13-21 of the PSR, he ordered a quantity of methamphetamine from

Guyette on one occasion (October 12, 2022) for which he paid $1,700. Three days later, investigators (who were wiretapping Guyette's phone) intercepted a package containing 237.2 grams of 88% pure methamphetamine sent from Yuma, Arizona addressed to Boddie at his residence in Pawtucket. While Boddie did inquire about ordering additional drugs from Guyette, there is no evidence that he ever actually ordered or obtained anything else from her or from Garza, the third alleged conspirator.

Probation takes the position (as does the government) that additional offenses allegedly engaged in by Boddie should be included as relevant conduct. Specifically, the PSR includes a description of Boddie's purchase of DMT and hallucinogenic mushrooms from Emily Cuddy in December, 2022 (¶¶ 22-24); contraband seized from him by Pawtucket, RI police following a car stop on February 6, 2023 (¶¶ 25-27); and contraband found during a search of his residence on February 8, 2023 (¶¶ 28-29). A firearm was seized from Boddie on February 6th, and firearms were found in his residence on February 8th. It is Boddie's contention that none of these other alleged acts related in any way to his participation in the charged conspiracy with Guyette and Garza and thus should not be included in the description of "Offense Conduct" or the calculation of his offense level under the guidelines. . *See* §IV A., B*., infra*.

**IV. GUIDELINES ISSUES AND CALCULATION.**

    **A.  Relevant Conduct (U.S.S.G. §1B1.3(a)(2)).**

Under U.S.S.G. §1B1.3(a)(2), "relevant conduct" includes all of a defendant's acts and omissions "that were part of the same course of conduct or common scheme or plan as the offense of conviction." While this language is quite broad, the First Circuit has repeatedly made clear that there are limits to its scope, particularly in drug cases. As that Court noted in *United States v.*

*Batista,* 239 F.3d 16, 21 (2001), "Section 1B1.3(a)(2) has its limits, however, and '[n]ot every drug transaction undertaken by every drug trafficker is necessarily linked in a meaningful sense'." (*quoting United States v. Sklar*, 920 F.2d 107, 111 (1st Cir. 1990). The Court added: "It is necessary for the sentencing judge to find a sufficient link between the acts charged and those included for sentencing purposes." *Batista,* 239 F.3d at 21. The burden is on the government to prove a sufficient nexus between the uncharged conduct and the offense of conviction. *Id. See also United States v. Young*, 78 F.3d 758, 763 (1st Cir. 1996).

In the instant case, the government has utterly failed to prove **any** nexus, let alone a sufficient nexus, between Boddie's limited participation in a methamphetamine conspiracy with Guyette and Garza (by purchasing methamphetamine from Guyette which was shipped by Garza on one occasion) and his later alleged acts as set forth at ¶¶22-29 of the PSR. Neither Guyette nor Garza had anything to do with any of those alleged acts, which were clearly not within the scope of the charged conspiracy or even part of the same course of conduct. If that connection has not been proved by a preponderance of the evidence, those acts should be stricken from the PSR and should not be considered by the Court in calculating Boddie's offense level under the guidelines.

There is an additional, equitable reason why Boddie's alleged offenses in February, 2023 should not be treated by this Court as relevant conduct for purposes of the guidelines. As noted in the PSR at §84, Boddie faces R.I. state charges as a result of the seizure of drugs and a firearm from him following a car stop on February 6, 2023. Those state charges subject Boddie to substantial sentences, including mandatory minimum sentences of imprisonment on at least two of those charges. *See* RI ST §§ 11-47-5, 11-47-8. He will likely face additional state charges stemming from the fruits of the February 8, 2023 search of his residence, which were turned over to the local police.

The government could have superceded the indictment in the instant case to incorporate Boddie's alleged offenses on February 6 and 8, 2023, but elected not to do so. Instead, it has apparently left those offenses to the State of Rhode Island to prosecute. Yet it now seeks to treat those same offenses as "relevant conduct" in the instant case, thus subjecting Boddie to double punishment. This Court should not countenance such an unfair result.

### B. Possession of a Firearm in Connection with the Offense (U.S.S.G. §2D1.1(b)(1)).

The applicability of this two-level upward adjustment in offense level depends upon whether Boddie's alleged conduct in February, 2023 qualifies as relevant conduct. If it does, then the firearms enhancement applies. If not, it doesn't. Boddie claims the requisite nexus between his alleged possession of a firearm and the offense of conviction has not been proven.

### C. Role in the Offense (U.S.S.G. §3B1.2(b)).

The PSR makes no adjustment for Boddie's role in the offense of conviction. That role (as noted above) consisted of ordering a single shipment of methamphetamine from Denise Guyette for $1,500 plus a $200 commission. There is no evidence that Boddie participated in the planning or management of Guyette's DTO, that he understood its scope and structure; that he exercised any decision-making authority; that he supervised others; that he shared in the profits, or that he had any other role whatsoever during the entire course of the conspiracy charged in the indictment. *See* Application Note 3( C ) to §3B1.2 for non-exhaustive list of relevant factors. Rather, he was a one-time purchaser of methamphetamine. That's it! Accordingly, he should be properly characterized by the Court as a minor participant under U.S.S.G. §3B1.2 (b) and sentenced as such.

### D. Offense Committed While on Probation?

The PSR takes the position that Boddie committed the instant offense while under the

criminal justice sentence for the case detailed at ¶74, thus subjecting him to two additional criminal history points. *See* PSR, ¶78. That case (Attleboro District Court No. 1834CR1535) involved Boddie's arrest in 2018 for stealing three containers of baby formula from a Market Basket supermarket and providing his brother's name, instead of his own, when the vehicle he was a passenger in was stopped by North Attleboro Police. According to the docket, on October 17, 2018, Boddie was found guilty and placed on probation for one year until October 19, 2019. Five days **after** the probationary period had lapsed, Boddie was found in violation of probation, and his probationary term was extended until October 23, 2020. A warrant issued on January 7, 2020, an amended probation violation notice was filed on November 18, 2020, and a warrant issued on January 6, 2021. Nothing else has happened in the past 32 months. According to the PSR: "Further state probation records have been requested," but such records have not been provided to defense counsel or the Court as of the date of this filing. The Addendum to the PSR does state (at p.57) that Probation "received verbal confirmation that [Boddie's] probation is considered active while in warrant in (sic) status." Query whether that constitutes sufficient proof that Boddie was still on probation for this 2018 misdemeanor in 2022 when he committed the instant offense? Absent such proof, he should not be assessed two criminal history points on that ground.

**E. Calculation of Applicable Sentencing Range under the Guidelines.**

According to the PSR, Boddie's Total Offense Level is 31 based on 32 for a quantity of "pure methamphetamine"(§2D1.1(c)(4); a two-level upward adjustment for possession of a firearm (§2D1.1(b)(1); and a three-level downward adjustment for acceptance of responsibility (§3E1.1(a).(b). According to the PSR, his criminal history score is eight with a two-point upward adjustment because he was on probation when the instant offense was committed. That results in

a total criminal history score of 10 (CHC V). The guideline sentencing range for 31/V is 168 to 210 months' imprisonment..

It is Boddie's position that his Total Offense Level is 27 (32 under the "pure methamphetamine guideline; a two-level downward adjustment for minor role; and a three-level downward adjustment for acceptance of responsibility. It is also Boddie's position, as set forth in his separately-filed motion requesting that the Court declare a categorical policy disagreement with the "pure methamphetamine" guideline that the Court should employ the methamphetamine mixture guideline, which would reduce his Total Offense Level to 21 (instead of 27) or 25 (instead of 31) based on the calculations set forth by Probation in the PSR.[2]

With respect to criminal history, it is Boddie's position that the government has failed to prove he was still on probation from his 2018 Attleboro District Court case for shoplifting baby formula when he committed the instant offense in 2022. Accordingly, he has eight criminal history points (not 10), and he is in CHC IV, not V.[3]

In sum, Boddie contends that his proper sentencing range under the guidelines is 21/IV, which would make the applicable sentencing range 57-71 months' imprisonment, a result far more consonant with justice based on all of the facts and circumstances before the Court.

---

[2] The government has sought and obtained two extensions of time to file a response to Boddie's motion. That response is now due on September 15th.

[3] As noted below and in the PSR at ¶139, an amendment to U.S.S.G. §4A1.1(d) effective November 1, 2023 would reduce Boddie's upward adjustment for being on probation at the time of the instant offense from two points to one point. That would leave him with nine criminal history points, rather than 10, placing him in CHC IV, rather than CHC V. The Court should apply that amendment as a variance in the interests of justice. .

## V. GROUNDS FOR A DOWNWARD VARIANCE FROM THE APPLICABLE GUIDELINES RANGE.

There are four separate grounds for a downward variance in this case. First, as set forth in Boddie's separately-filed motion respecting the "pure methamphetamine" guidelines, those guidelines are unreasonable, not grounded in fact, artificially increase the guideline range for all methamphetamine offenses, and have been rejected by a growing number of district courts throughout the United States. Accordingly, the Court should employ the methamphetamine mixture guidelines instead.

Second, based on an amendment to U.S.S.G. §4A1.1(d) effective November 1, 2023, Boddie would receive one "status point" for being on probation rather than two (assuming the Court finds he was on probation at the time of the instant offense). *See* Amendments to the Sentencing Guidelines, U.S. Sentencing Commission (4/27/23), pp. 77-82. The Court should apply that amendment in the interests of justice, which would put Boddie in CHC IV, not CHC V.

Third, whether the Court finds that Boddie is in CHC IV or CHC V, either category substantially overstates his criminal history. That history, while extensive, consists almost entirely of driving offenses or petty larceny offenses committed while Boddie was in the throes of drug addiction. He is not a violent person and has never served a substantial sentence of incarceration.

Finally, based on his background and character, as reflected in the exhibits submitted herewith, Boddie is. at his core, a good, hard-working person who has struggled with addiction and is now on a constructive path. He will need treatment and support in the future and is eager to continue on that journey. Long-term incarceration of Mr. Boddie is neither warranted nor necessary. The Court should take into account the abuse he suffered as a child, his struggles with addiction, and his long work history in fashioning an appropriate sentence.

## VI. SENTENCING RECOMMENDATION.

As the Court well knows, the core principle embodied in the sentencing statute, 18 U.S.C. §3553, is that the sentence imposed should be "sufficient, but not greater than necessary" to fulfill the purposes of sentencing set forth at §3553 (a)(2), including punishment, general deterrence, specific deterrence, and rehabilitation. For the reasons enumerated herein, the defendant requests that the Court sentence him to a term of 60 months' imprisonment, to be followed by three years of supervised release. Special conditions of supervised release should include appropriate substance abuse and mental health treatment and abstinence from illegal drugs or alcohol. Upon release from BOP custody, he should be screened for admission into the Court's CARE Program.

The defendant requests that the Court recommend that he be considered for admission to the BOP's RDAP intensive drug treatment program. The defendant also requests that the Court recommend placement in a BOP facility as close as possible to Rhode Island so he can maintain his close, supportive relationships. Finally, the defendant requests that a fine be waived based on his inability to pay.

Respectfully submitted,

NATHAN BODDIE

By his attorney,

    /s/ James L. Sultan

James L. Sultan, BBO #488400
jsultan@rankin-sultan.com
Rankin & Sultan
1666 Massachusetts Avenue, Suite P-16
Lexington, MA 02420
(617) 720-0011

**CERTIFICATE OF SERVICE**

      I hereby certify that this document(s) filed through the ECF System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 12, 2023.

      /s/ James L. Sultan_____